Elias **NUNEZ–GUARDADO,**
**Plaintiff-Appellant,**

v.

John T. **HADDEN, and the United States**
**Parole Commission,**
**Defendants-Appellees.**

No. 82–1601.

United States Court of Appeals,
Tenth Circuit.

Dec. 12, 1983.

Vicki Mandell-King, Asst. Federal Public Defender, Denver, Colo. (Michael G. Katz, Federal Public Defender, Denver, Colo., was also on brief), for plaintiff-appellant.

Raymond P. Moore, Asst. U.S. Atty., Denver, Colo. (Robert N. Miller, U.S. Atty., Linda A. Surbaugh, and Charles H. Torres, Asst. U.S. Attys., Denver, Colo., were also on brief), for defendants-appellees.

Before SETH, Chief Judge, HOLLO-WAY, Circuit Judge, and ARRAJ, District Judge.[*]

HOLLOWAY, Circuit Judge.

Plaintiff Elias Nunez-Guardado timely appeals the order denying his petition for habeas relief. Nunez-Guardado contends that relief should have been granted because the Parole Commission (1) by considering information concerning Nunez-Guardado's role in the deaths of 13 people in order to go above its guidelines in setting his parole date abused its discretion, violated the statutes and regulations, and violat-

---

[*] Honorable Alfred A. Arraj, United States District Judge of the District of Colorado, sitting by designation.

ed his due process rights; (2) by going above its guidelines when there was no good cause for doing so, and by ignoring mitigating circumstances, abused its discretion and violated the statutes and regulations and Nunez-Guardado's due process rights; (3) by failing to give adequate reasons for its decision to go above its guidelines violated the statutes and regulations and his due process rights; and (4) by failing to give adequate consideration to institutional progress, instead of focusing solely on the severity of the offense, abused its discretion and acted contrary to the legislative intent of 18 U.S.C. § 4205(b)(2). We disagree and affirm.

I

In July 1980 a group of approximately thirty illegal aliens entered the United States by travelling on foot through the Arizona desert. Thirteen members of the group died in the desert. Nunez-Guardado was apprehended by the U.S. Border Patrol in the desert and later pleaded guilty to aiding and abetting the illegal entry of one alien in violation of 8 U.S.C. § 1324(a)(1). Brief of Appellee at 2–3. Pursuant to a plea agreement the Government dismissed other counts against Nunez-Guardado. Brief of Appellant at 3. On October 20, 1980, Nunez-Guardado was sentenced to a term of five years, the maximum sentence under the law, with parole eligibility under 18 U.S.C. § 4205(b)(2). Brief of Appellee at 3; I R. 23.

In March 1981 Nunez-Guardado appeared before hearing examiners of the Parole Commission at the Federal Correctional Institution, Englewood, Colorado. He was not represented by counsel; however, an interpreter was present. I R. 97–100. Nunez-Guardado was asked about his involvement in the smuggling incident. He stated that his participation arose out of his desire to come into the United States. He was also told that he would get a discount on the price if he would help transport the group. When the group of 34 got into the desert, the two guides deserted the group when they began running out of supplies.

Nunez-Guardado assisted the group by helping the elderly and females and by building fires to attract attention. He later left the group to seek help and the Border Patrol found him. He told them about the others needing help but the Border Patrol did not go for them until the next day. *Id.* at 99.

The examiners recommended a presumptive parole after the service of 24 months. I R. 97–100. Nunez-Guardado's case was referred to the national commissioners. I R. 25. In a Notice of Action sent April 23, 1981, Nunez-Guardado's offense behavior was rated as moderate severity and he was given a salient factor score of 10 (very good). Presumptive parole was recommended after service of 36 months. I R. 26.

After exhausting administrative remedies, I R. 27–29, Nunez-Guardado filed this habeas suit in the district court. I R. 1–11. After a hearing the magistrate recommended that the petition be granted. I R. 82–85. The district judge held a further hearing and then filed a Memorandum and Order of Dismissal of the case. I R. 117–118. The court found essentially that it was not an abuse of discretion for the Parole Commission to impose collective responsibility for the deaths of the 13 illegal aliens on all those convicted of participation in the illegal venture. The court also found that a sentence imposed under 18 U.S.C. § 4205(b)(2) simply determines the time of eligibility for parole but does not alter or affect the standards for release. *Id.* This appeal followed.

II

"Judicial review of Parole Board decisions is narrow. The standard of review of action by the Parole Commission is whether the decision is arbitrary and capricious or is an abuse of discretion." *Dye v. United States Parole Commission,* 558 F.2d 1376, 1378 (10th Cir.1977); *see* 18 U.S.C. § 4218(d) (1976). Our inquiry must begin with this basic rule in mind.

A.

We first consider whether the Commission erred in using information concerning

Nunez-Guardado's role in the deaths of 13 people in order to go above its guidelines in setting his parole date. Nunez-Guardado argues that such information was unsupported by specifics and uncorroborated by established facts, that the preponderance of evidence test was not met, and that consideration of this information violated Nunez-Guardado's expectations concerning a plea agreement.

■ In making a determination relating to release on parole the Parole Commission *shall* consider, if available and relevant, presentence investigation reports, *inter alia.* See *Robinson v. Hadden,* 723 F.2d 59 (10th Cir.1983), filed today, and the authorities cited therein. After consideration of the presentence report which was submitted *in camera,* Brief of Appellee at 4, the district court found that

> [t]his is not a case in which the Parole Commission has relied on information which was not involved in the adjudicative record. The presentence report prepared for the sentencing judge includes all of the information which was considered.

I R. 117. Because the administrative file also contains a Border Patrol Report, to which Nunez-Guardado objects, we feel it clear it was also considered. However, for reasons explained below we find no error in the consideration of that report.

■ Nunez-Guardado was apprised of the information contained in the presentence report on two separate occasions and was afforded an opportunity to respond. At his sentencing on October 20, 1980, his attorney stated that he had read the presentence report and "it appears to be accurate from the information I received from Mr. Nunez." I R. 77–78. Nunez-Guardado was present at the hearing before the Parole Commission panel on March 11, 1981. The subject of the deaths of the aliens was discussed and Nunez-Guardado presented formation favorable to himself. I R. 99. He related to the Examiners at the March 11, 1981 hearing that the leader of the entire operation was Carlos Rivera who died in the desert, that the next person involved was Louis Miranda who remained in Mexico and did not cross the border, and that Nunez-Guardado's own participation arose out of his desire to come into the United States and his being told that he would get a discount on the price if he would help transport the group. I R. 97.

Nunez-Guardado related that two Mexican guides assigned by Miranda helped guide the group through the desert and that both guides deserted the group. Nunez-Guardado described how he assisted the elderly and the women, and attempted to attract attention by building fires.[1] *Id.* Letters from four of the aliens in Nunez-Guardado's central file strongly supported his position, citing details of his assistance and "heroic acts" on their behalf. I R. 36, 44–54. However, the Commission's notice of action concerning the 36 month determination stated that

> [a]fter review of all relevant factors and information presented a decision above the guidelines appears warranted because you and two co-defendants attempted to assist 34 undocumented persons to illegally enter the U.S. During the attempt 13 persons died in the desert.

I R. 26.

We cannot presume that the Commission ignored the information favorable to Nunez-Guardado. We thus feel that the record shows no abuse of discretion.

Nunez-Guardado objects particularly to consideration of the Border Patrol Report, as well as to the other information. We

---

1. In his response to objections to the recommendation of the United States Magistrate, Nunez-Guardado stated:

    The pre-sentence report on which Respondents rely is not inconsistent with Nunez-Guardado's explanation given before the hearing examiners and Magistrate Abrams. He stated he was acquainted with the persons involved in the smuggling scheme. He was given a $200.00 discount on his own fee for coming to the United States. It was arranged that he would pay the remaining $800.00 upon employment in the United States. He did agree to help out.

    I R. 108.

feel, however, that the Border Patrol Report and the presentence report are materials designated by the statute and the regulations as being proper for consideration. The statute and regulations provide, *inter alia,* that in making a parole determination the Commission shall consider, if available and relevant, presentence investigation reports and such additional relevant information concerning the prisoner (including information submitted by the prisoner) as may be reasonably available. 18 U.S.C. § 4207 (1976); 28 C.F.R. § 2.19(a)(3) and (b) (1980).

As noted, Nunez-Guardado also objects strenuously to consideration of the 13 deaths because of the plea bargain agreement and his expectations based on that agreement. More specifically he says that while it does not appear that there was any express assurance to him that the 13 deaths would not be considered by the Parole Commission, he entered his plea without the knowledge that it would be considered, or under the mistaken impression that such evidence would not be considered in his parole determination. Brief of Appellant at 12.

We have, however, held that the Parole Commission may consider evidence concerning counts dismissed as a result of a plea bargain agreement. *See Robinson v. Hadden, supra.* As in *Robinson,* we find no basis here for a claim that an agreement not to consider the deaths was a specific part of the plea agreement, nor the subject of any representations made by the Government.[2] Because Nunez-Guardado was given the opportunity to challenge the information considered by the Commission, and because the Commission's consideration of this information did not violate a plea agreement or any representation made by the Government, we find the Commission did not err in considering the information concerning the deaths of the 13 people in order to go above its guidelines in setting Nunez-Guardado's parole date.

### B.

Nunez-Guardado next argues that by going above its guidelines when there was no good cause for doing so, and by ignoring mitigating circumstances, the Parole Commission abused its discretion and violated the statutes and regulations and Nunez-Guardado's due process rights.

With an offense behavior severity rating of moderate and a salient factor score of 10 (very good), the Parole Commission's Guidelines for Decision-Making provide that the

---

2. In a response in the district court, Nunez-Guardado relied on a letter from the Assistant United States attorney which discussed the plea agreement. That letter reads as follows:

September 19, 1980

Frank R. Zapata, Esquire
Assistant Federal Public Defender
Post Office Box 2710
Tucson, Arizona 85702
Arthur J. Hutton, Esquire
182 North Court Avenue
Tucson, Arizona 85701
John H. Messing, Esquire
220 East Speedway
Tucson, Arizona 85705

Re: United States of America v. Nunez-Guardado, et al, CR 80–161–TUC–JAW

Gentlemen:

As part of my plea agreement offer to your clients by letter of September 11, 1980, I can now add an assurance that the State of Arizona and Pima County Attorney's Office will bring no charges against your clients arising out of these incidents. I spoke with Deputy Pima County Attorney Randy Stevens on September 18, 1980 and have his authorization to make the above assurance to your clients.

If with this addition your clients are agreeable to the proposed plea agreement, then I would appreciate your advising me of the count to which your client will plead guilty and scheduling the plea with the court as soon as possible so that I can canel (sic) trial witnesses.

Sincerely,
MICHAEL D. HAWKINS
United States Attorney
District of Arizona
/s/ John G. Hawkins
John G. Hawkins
Assistant U.S. Attorney

JGH: emm
cc: Honorable James A. Walsh

I R. 55.

We are satisfied that this letter amounts to no express or implied agreement that the deaths would not be considered by the Parole Commission.

customary total time for Nunez-Guardado to serve before release is 10–14 months. 28 C.F.R. § 2.20 (1980). As noted, the Parole Commission disagreed with the recommendation, made by the Examiners, of parole after service of 24 months, and instead the Commission recommended presumptive parole "after service of 36 months." I R. 26. 18 U.S.C. § 4206(c) (1976) provides:

> The Commission may grant or deny release on parole notwithstanding the guidelines referred to in subsection (a) of this section if it determines there is good cause for so doing: *Provided,* That the prisoner is furnished written notice stating with particularity the reasons for its determination, including a summary of the information relied upon.

We note the following statements in the legislative history of 18 U.S.C. § 4206(c) (1976):

> For the purposes of this section "good cause" means substantial reason and includes only those grounds put forward by the Commission in good faith and which are not arbitrary, irrational, unreasonable, irrelevant or capricious.

> The definition of what constitutes good cause to go outside the established guidelines can not be a precise one, because it must be broad enough to cover many circumstances.

> For example, in making a parole release determination above the guidelines, the Commission would consider factors which include whether or not the prisoner was involved in an offense with an unusual degree of sophistication or planning, or has a lengthy prior record, or was part of a large scale conspiracy or continuing criminal enterprise.

H.R.Conf.Rep. No. 94–838, 94th Cong., 2d Sess. 27, *reprinted in* [1976] U.S.Code Cong. & Ad.News 335, 351, 359.

■ As good cause for going above the guidelines here the Parole Commission stated that

> [a]fter review of all relevant factors and information presented, a decision above

the guidelines appears warranted because you and two co-defendants attempted to assist 34 undocumented persons to illegally enter the U.S. During the attempt 13 persons died in the desert.

I R. 26. As stated by the district court, "While reasonable persons may differ in their evaluation of the significance of these deaths in measuring the severity of the offense, it is not an abuse of discretion to impose collective responsibility for this tragedy upon all those convicted of participation in the illegal venture." I R. 117–118. Furthermore, although it is true that certain factors exist which are favorable to Nunez-Guardado, they are only factors for the Commission to consider, which it did. We feel that a rational basis existed in the record to support the Commission's finding that there was good cause to go above the guidelines, due to Nunez-Guardado's participation in the venture resulting in the 13 deaths. We conclude that the Commission did not abuse its discretion in making that determination.

### C.

Nunez-Guardado further argues that by failing to give adequate reasons for its decision to go above its guidelines the Parole Commission violated the statutes and regulations and his due process rights.

■ Under the Nebraska parole statutes, the Supreme Court concluded that a liberty interest was created sufficient to require some measure of constitutional protection. *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 12, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979). We need not make that determination here concerning the federal parole statutes.[3] In any event, the Parole Commission's procedures, discussed above, complied with standards of due process established in *Greenholtz.* Nunez-Guardado was afforded an opportunity to be heard and the Commission notified him of the respects in which he fell short of qualifying for parole

---

**3.** We also declined to reach the issue whether the federal parole statute creates a liberty interest in *Pope v. United States Parole Com'n,* 647 F.2d 125, 126 (10th Cir.1981).

until the time indicated. *Greenholtz*, 442 U.S. at 15–16, 99 S.Ct. at 2107–08.

In addition to the due process requirements,

the parole regulations themselves also mandate an adequate statement in order to permit full exercise of an applicant's right of appeal. *See* 40 Fed.Reg. 41329 (Sept. 5, 1975) (Background Statement, part (B)(b)(3) *citing Fisher v. United States,* 382 F.Supp. 241 (D.Conn.1974)). *See also Bowman v. United States Board of Parole,* 411 F.Supp. 329, 330 (W.D.Wis. 1976). *Cf. Robinson v. United States Board of Parole,* 403 F.Supp. 638, 640 (W.D.N.Y.1975).

*Jacoby v. Arnold,* 442 F.Supp. 144 (M.D.Pa. 1977). In *Schuemann v. Colorado State Bd. of Adult Parole,* 624 F.2d 172, 174 (10th Cir.1980), we evaluated reasons given by the Parole Commission for denial of parole pursuant to 18 U.S.C. § 4206(b) (1976) and stated that

[i]t would be discordant to require unduly specific and detailed reasons from a Board vested with a subjective, predictive, and experimental function. It is evident from the notice form sent Schuemann that the Board was concerned about the short time Schuemann had served for a serious offense. This is a sufficient and proper reason. *Cf. Loch v. Keohane,* No. 79–1206 (10th Cir. Nov. 27, 1979).

We find that the reasons given by the Parole Commission for its decision to go above its guidelines were stated with sufficient particularity, and included a summary of the information relied upon, so that not only could Nunez-Guardado fully exercise his right of appeal but he was able to understand why the Commission went above its guidelines. *Solomon v. Elsea,* 676 F.2d 282, 286 (7th Cir.1982).

### D.

Lastly, Nunez-Guardado contends that by failing to give adequate consideration to institutional progress, instead of focusing solely on the severity of the offense, the Parole Commission abused its discretion and acted contrary to the legislative intent of 18 U.S.C. § 4205(b)(2).

The weight to be given to institutional adjustment is a matter of discretion. *Hayward v. United States Parole Com'n,* 659 F.2d 857, 861 (8th Cir.1981), *cert. denied,* 456 U.S. 935, 102 S.Ct. 1991, 72 L.Ed.2d 454 (1982); *Smith v. Bell,* 462 F.Supp. 55, 59 (N.D.Tex.1978), *aff'd* 588 F.2d 169 (5th Cir.1979). Prison conduct is only one of the factors to be considered in parole release decisions. *Hayward,* 659 F.2d at 861; *Persico v. United States Dept. of Justice,* 426 F.Supp. 1013, 1019 (E.D.Ill. 1977), *aff'd,* 582 F.2d 1286 (7th Cir.1978). The Parole Commission's decision to go above its guidelines in the face of a favorable institutional record in no way suggests or establishes that Nunez-Guardado's record was disregarded. *See id.*

The May 4, 1981, Notice of Action by the Commission stated that it had reviewed all relevant factors, I R. 26, and the summary of the hearing panel recited the favorable facts about Nunez-Guardado's institutional conduct, including his taking a vocational training course and a typing and English course. I R. 98. The exhibits include a June 9, 1981 report concerning institutional adjustment, which states that during Nunez-Guardado's "entire period of incarceration he has compiled a clear conduct record," and that he took English, auto mechanics, and typing courses and received above average work reports in those areas. I R. 40. He had no prior record.

We therefore find that the Parole Commission did not abuse its discretion in the weight it gave to Nunez-Guardado's institutional progress.

### III

In sum, having considered all of the plaintiff's appellate arguments we find that the Parole Commission did not abuse its discretion, or violate Nunez-Guardado's rights under the Due Process Clause, the statutes or regulations, in setting his parole

date and that the district court properly denied the petition for habeas relief.

AFFIRMED.