**Errol B. RESNICK, Plaintiff–Appellant,**

v.

**UNITED STATES PAROLE COMMIS-SION, et al., Defendants–Appellees.**

No. 86–1509.

United States Court of Appeals,
Tenth Circuit.

Dec. 21, 1987.

Rehearing Denied Feb. 23, 1988.

Cyd Gilman, Asst. Federal Public Defender, D. Kan. (Charles D. Anderson, Federal Public Defender, Wichita, Kan., with her on the brief), for plaintiff-appellant.

Leon J. Patton, Topeka, Kan. (Benjamin L. Burgess, Jr., U.S. Atty., Wichita, Kan., Alleen S. Castellani, Asst. U.S. Atty., D. Kan., Topeka, Kan., with him on the brief), for defendants-appellees.

Before MOORE, BALDOCK and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Errol B. Resnick, an inmate in the United States Penitentiary, Leavenworth, Kansas, filed a petition for habeas corpus in the United States District Court for the District of Kansas against the United States Parole Commission, challenging a decision of the Commission which held that Resnick

would continue to stay in prison for the time being and that he would not be afforded another parole hearing until April, 1992.[1] 28 U.S.C. § 2241. The district court issued a show cause order, and the Commission filed an answer and return, to which Resnick filed a traverse. Based on the pleadings, and attachments thereto, the district court denied Resnick's petition and dismissed the action. Resnick appeals.

Resnick is presently incarcerated in the United States Penitentiary, Leavenworth, Kansas, pursuant to four sentences imposed by federal district courts in the State of Florida. The sentences thus imposed are to be served consecutively, and they total 34.5 years. Resnick has now served approximately 15 years under those consecutive sentences. Specifically, Resnick was sentenced on federal charges as follows:

1. 17 years by the United States District Court for the Southern District of Florida on November 2, 1971, upon a conviction for a narcotics conspiracy;

2. 10 years, to be served consecutively to the 17–year sentence referred to in paragraph 1, by the United States District Court for the Middle District of Florida on December 6, 1972, upon a conviction for unlawful melting of United States coins;

3. 2 years and six months, to be served consecutively to the sentences mentioned above, by the United States District Court for the Middle District of Florida on January 24, 1973, upon a conviction for illegal sale of firearms; and

4. 5 years, to be served consecutively to the sentences mentioned above, by the United States District Court for the Middle District of Florida on September 12, 1973, upon a conviction for conspiracy to escape and attempted escape.

In addition to the four sentences mentioned above, Resnick is serving two life sentences imposed by state courts in Florida for hiring others to commit two murders. The Florida sentences were to be served concurrently with the federal sentences now being served.

Resnick had his initial hearing before examiners of the United States Parole Commission on August 25, 1981. The examiners assigned an offense severity rating for each offense and aggregated those ratings to result in a greatest II rating, indicating that Resnick's offenses were very serious. As concerns Resnick's salient factor rating, the examiners fixed that at 10, indicating that he was a good parole risk. In this regard, the examiners noted that Resnick, while incarcerated, had earned a bachelor's degree and a master's degree, and was working toward a doctorate degree.[2] Resnick was also highly recommended for parole by a former assistant educational director at the penitentiary.

The examiners referred Resnick's case to the National Commissioners on September 8, 1981, for original decision because of the unusual sophistication of the crimes involved and because of the possibility of an ongoing criminal conspiracy. On October 16, 1981, the National Commissioners determined that it needed more information concerning the scope of the offenses. A letter was written at that time by the National Commissioners to the U.S. Probation Office requesting more information. The matter was subsequently referred back to the examiners for further hearing, at which time information obtained from the United States Probation Office, as well as other matters, was to be considered. Resnick was informed on February 23, 1982, which was later corrected on March 2, 1982, that

---

**1.** In *Dunn v. U.S. Parole Commission,* 818 F.2d 742, 744 (10th Cir.1987), the court held that a district court had subject matter jurisdiction over a habeas corpus proceeding despite the fact that the Parole Commission rather than the warden of the prison was named in the petition. The court reasoned that: "[a]lthough the Leavenworth warden cannot be said to be indifferent to the resolution of Mr. Dunn's challenge, only in the most formal sense does he control wheth-

er Mr. Dunn is released ... [r]ather, ... the Commission directly control(s) whether Mr. Dunn remains in custody."

**2.** Resnick earned his bachelor's degree in psychology, his master's degree is in the field of numismatics, and he is working toward a doctorate in finance.

the hearing would be held on April 27, 1982.

At the hearing on April 27, 1982, the examiners again gave Resnick a salient factor score of 10, and an offense severity rating in the greatest II category. The case was again referred to the National Commissioners with a recommendation that release of Resnick at that time would depreciate the seriousness of his several offenses, which recommendation noted Resnick's state criminal convictions, as well as the four federal convictions, and recommended that Resnick be kept in custody until April 1, 1992, when a new parole hearing would be held.[3] On June 4, 1982, the National Commissioners adopted the recommendations of the hearing examiners. Resnick's subsequent appeal to the National Appeals Board was denied, whereupon Resnick instituted the present proceeding.

The present appeal raises two issues: (1) The offenses for which Resnick was convicted and sentenced having occurred in 1971, 1972, and 1973, does the application of statutes and regulations in effect at the time of Resnick's parole board hearings in 1981 and 1982 violate the *ex post facto* provision of the United States Constitution, Article 1, Section 9, Clause 3? (2) Were Resnick's due process rights violated by arbitrary and capricious action on the part of the Commission?

### *Ex Post Facto*

Article I, Section 9, Clause 3, of the Constitution provides that, "No Bill of Attainder or *ex post facto* law shall be passed."

18 U.S.C. § 4206(a), in effect at the time of Resnick's parole hearings, provides as follows:

(a) If an eligible prisoner has substantially observed the rules of the institution or institutions to which he has been confined, and if the Commission, upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner, determines:

(1) that release would not depreciate the seriousness of his offense or promote disrespect for the law;

(2) that release would not jeopardize the public welfare;

subject to the provisions of subsections (b) and (c) of this section, and pursuant to guidelines promulgated by the Commission pursuant to section 4203(a)(1), such prisoner shall be released.

\* \* \* \* \* \*

(c) The Commission may grant or deny release on parole notwithstanding the guidelines referred to in subsection (a) of this section if it determines there is good cause for so doing: *Provided,* That the prisoner is furnished written notice stating with particularity the reasons for its determination, including a summary of the information relied upon.

In denying Resnick present parole and continuing the matter for a 10–year reconsideration to April, 1992, the National Commissioners spoke as follows:

REASONS:
Your offense behavior has been rated as Greatest II severity because you were involved in melting $9,000 in U.S. coins, sold firearms without filing the appropriate ATF forms, smuggled approximately 900 lbs. of marijuana and you had two individuals murdered (as evidenced by your Florida conviction) in conjunction with the marijuana offense. Your salient factor score (SFS–81) is 10 (see attached sheet). You have been in custody a total of 130 months. Guidelines established by the Commission for adult cases which consider the above factors indicate a minimum of 52 months to be served before release for cases with good institutional program performance and adjustment. In addition, you attempted to

---

**3.** In *Solomon v. Elsea,* 676 F.2d 282, 287 (7th Cir.1982), the Seventh Circuit stated that the "magnitude" of a prisoner's individual crime may be the "good cause" referred to in 18 U.S.C. § 4206(c) for which the Commission may deny parole notwithstanding the guidelines and that "[i]t is the extenuating circumstances of the particular offense, not the nature of the violation categorizing him in the guidelines, which must make up the necessary good cause."

escape from a secure facility and guidelines established by the Commission for that offense indicate a customary range of 6–12 months to be added to your minimum range of 52 months. Your combined minimum range is 58 months.

After review of all relevant factors and information presented, it is found that your release at this time would depreciate the seriousness of your offense behavior. Commission guidelines for Greatest II severity cases do not specify a maximum limit. Therefore, the decision in your case is based in part upon a comparison of the relative severity of your offense behavior with the offense behaviors and time ranges specified in the Greatest I severity category.

In rendering this decision, the Commission also noted that the victims were murdered in an especially brutal fashion; one victim was mutilated by being covered with lye and the other thrown out of a car and left by the roadside.

Also, during the attempted escape, a hostage was taken.

In essence, then, the National Commissioners denied Resnick present parole and postponed reconsideration to April, 1992, because his present release "would depreciate the seriousness of ... [Resnick's] offense behavior" which formed the basis for his four federal convictions. In making that decision, the Commission also "noted" that in each of the homicides for which Resnick was convicted of murder under Florida law the victims were treated in especially brutal manner, one victim being mutilated when covered with lye and the other thrown out of a car and left by the roadside.

■ Resnick's *ex post facto* argument, as we understand it, is that in denying parole the Commission concluded that to release Resnick now would, in the language of 18 U.S.C. § 4206(a)(1), "depreciate the seriousness of his offense behav-

ior," and that such language did not appear in 18 U.S.C. § 4203 (enacted in 1948) (the predecessor statute to 18 U.S.C. § 4206(a)(1)), which was in effect at the time of his four federal convictions.[4] In other words, counsel argues that at the time Resnick suffered his four federal convictions, parole could not have been denied on the ground that to grant parole would "depreciate the seriousness of his offense behavior," and that the statute in effect at the time of his parole hearing which permitted denial of parole on that ground violated the *ex post facto* provision. We do not agree with Resnick's premise that in 1971–73 parole could not be denied, notwithstanding any guidelines, on the ground that to grant parole would have depreciated the seriousness of the underlying offenses.

In *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981), a case involving a Florida statute which reduced the "gain time" for good conduct and obedience to prison rule, the Supreme Court held that for a criminal or penal statute to be *ex post facto* it must be retrospective, i.e., it must apply to events occurring before its enactment *and* it must "disadvantage" the person affected by it.

The district court in the instant case concluded that although § 4206(a)(1) was applied retroactively, that such application did not "disadvantage" Resnick. We agree. The enormity or magnitude of the offenses which form the basis for a prisoner's incarceration has always been a basis for denying parole, notwithstanding guidelines. And this is true even though the predecessor statute to § 4206(a)(1) did not contain the "depreciate the seriousness of the offense" language. The predecessor statute did provide that parole could be granted if it appeared that there is a reasonable probability that the prisoner will live and remain at liberty without violating laws, and

---

4. The predecessor statute, 18 U.S.C. § 4203(a) stated: "If it appears to the Board of Parole from a report by proper institutional officers or upon application by a prisoner eligible for release on parole, that there is a reasonable probability that such prisoner will live and remain at liberty without violating the laws, and if in the opinion of the Board such release is not incompatible with the welfare of society, the Board may in its discretion authorize the release of such prisoner on parole."

if the Commission believes that "such release is compatible with the welfare of society." In *Wiley v. United States Board of Parole*, 380 F.Supp. 1194 (M.D.Pa. 1974), the court held that denying parole on the ground that to grant parole would "depreciate the seriousness of the offense" came within the language of the predecessor statute, commenting that the seriousness of the offense is a factor which is related to and could be "determinative of the question of whether the prisoner's release is compatible with the welfare of society." We agree with such reasoning. Indeed the enormity and magnitude of the underlying offenses for which the prisoner is incarcerated has always been a most important factor in determining whether an inmate should be paroled. And we agree that "early parole" in such a case might tend to "depreciate" the seriousness of the inmate's criminal behavior.

■ We regard Resnick's *ex post facto* argument to be directed mainly to the statute above referred to, § 4206(a)(1). However, counsel does also complain that the guidelines applied in Resnick's parole hearings in 1981 and 1982 also violated the *ex post facto* clause. We fail to see just what guidelines were applied which "disadvantaged" Resnick. Indeed, the thrust of Resnick's entire argument is that the guidelines in effect in 1981–1982 suggested Resnick's early parole release and that the Commission erred in going outside the guidelines. In this general connection, however, we note that the decided weight of authority is that guidelines of this sort, being guidelines only, are not subject to the *ex post facto* prohibition. *Beltempo v. Hadden*, 815 F.2d 873, 875 (2d Cir.1987); *Wallace v. Christensen*, 802 F.2d 1539, 1553–54 (9th Cir.1986).

### Due Process

■ We fail to see that Resnick's due process rights were violated in either of the two proceedings before the Commission. He was given notice under the then existing statute regulations and his request for documents was belated, untimely, and non-specific.[5]

*Nunez–Guardado v. Hadden*, 722 F.2d 618 (10th Cir.1983) has present pertinency. In that case we upheld Commission action which departed from the guidelines and fixed the inmate's parole date above the guidelines' recommended date of release, stating that "judicial review" of Parole Commission action is "narrow" and that the test is whether the decision of the Commission is arbitrary or capricious, or an abuse of discretion. We also noted that "prison conduct" is only one of the factors to be considered in parole release decision. We further held that consideration by the Commission of criminal acts other than the one count to which the defendant had pleaded guilty after plea bargaining was proper. And having held that the Commission's action was not arbitrary or capricious, or any abuse of discretion, but was based on "good cause" and was non-violative of due process, we declined to reach the issue of whether the federal parole statutes create a liberty interest.

■ In sum, although Resnick had attempted escape in Florida, he apparently had a very favorable record in the penitentiary in Leavenworth, Kansas. However, the Commission concluded that the magnitude of the federal crimes for which Resnick had been convicted, coupled with the two state convictions for murder, which were apparently related to his federal conviction for drug conspiracy, amounted to a "good cause" for denying present parole, since to grant present parole would "depreciate" the seriousness of his offenses. Such, in our view, constitutes a "rational basis" for the Commission's action. *Nunez–Guardado*, 722 F.2d at 623; *Solomon*, 676 F.2d at 290.

Judgment affirmed.

---

5. 28 C.F.R. § 2.55(a) provides: "at least 60 days prior to a hearing scheduled pursuant to 28 C.F.R. 2.12 or 2.14 each prisoner shall be given notice of his right to request disclosure of the reports and other documents to be used by the Commission in making its determination."