**Paul Elmer MELVIN, Appellant,**

v.

**Joseph S. PETROVSKY, Warden, United States Medical Center for Federal Prisoners, United States Parole Commission, Appellees.**

No. 82–2261.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1983.

Decided Oct. 19, 1983.

**10**

Robert G. Ulrich, U.S. Atty., David C. Jones, Asst. U.S. Atty., Springfield, Mo., for appellees.

Raymond C. Conrad, Jr., Federal Public Defender, W.D. Mo., R. Steven Brown, Asst. Federal Public Defender, Springfield, Mo., for appellant.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

HENLEY, Senior Circuit Judge.

Paul Elmer Melvin filed a petition for habeas corpus alleging that the United States Parole Commission incorrectly classified his offense as "Greatest I severity" instead of "very high," as a result of which he will be confined in prison for a longer period. The district court denied the petition. For reversal, Melvin argues that the Commission considered improper information when it classified his offense, that the Commission did not apply the required standard for evaluation of the evidence, that the Commission improperly classified his offense, and that the Commission acted arbitrarily when it classified his offense differently from that of his codefendant.

Melvin was convicted of various charges involving interstate transportation of stolen property. He was given an eight-year sentence. Shortly after he entered the Medical Center for Federal Prisoners, an initial parole determination hearing was held. The Commission panel rated Melvin's offense as "Greatest I severity" because it involved over $500,000.00 of stolen property. The panel made other determinations not at issue here, and concluded that Melvin should serve 40 to 52 months before being paroled. Melvin appealed to both the Regional and National Appeals Boards, arguing that his offense should have been classified as "very high," and the period of incarceration thereby decreased to 24 to 36 months. The Boards affirmed the panel's determination. Melvin raises substantially the same argument here.

■ Melvin first challenges the Commission's reliance on information in his presentence report. That report stated that over a four-year period, Melvin received approximately $560,000.00 for stolen soybean meal. Although he does not deny that the total thefts exceeded $500,000.00, Melvin argues that his indictment shows that he was involved only in the theft of a little over $96,000.00. Admittedly, the indictment covers less than the entire conspiratorial period of some four years and not all of the substantive acts of the conspirators.

The Commission is not limited to the indictment and conviction in determining the severity of the offense, and may consider other reliable information. *Page v. U.S. Parole Comm.*, 651 F.2d 1083, 1086 (5th Cir.1981). This includes a presentence report. 18 U.S.C. § 4207(3); *United States ex rel Goldberg v. Warden*, 622 F.2d 60, 64–65 (3d Cir.), *cert. denied*, 449 U.S. 871, 101 S.Ct. 210, 66 L.Ed.2d 91 (1980); *see Edwards v. United States*, 574 F.2d 937, 943–44 (8th Cir.1978), *cert. dismissed*, 439 U.S. 1040, 99 S.Ct. 643, 58 L.Ed.2d 700 (1979); *cf. Wixom v. United States*, 585 F.2d 920 (8th Cir.1978) (inappropriate for Commission to consider information in presentence report which was objected to at sentencing and expressly disavowed by sentencing judge).

Melvin's second argument is directed at the Commission's alleged failure to follow its own regulations. Under 18 C.F.R. § 2.19(c), when a prisoner disputes information considered in making parole decisions, the Commission must resolve the dispute by the preponderance of the evidence. Melvin contends that there is no showing on the record before this court that the Commission made such a finding on the issue of the extent of the theft.

In a summary of Melvin's parole hearing, the Board noted that the presentence report indicated that over $560,000.00 was stolen over a four-year period. The summary also stated that Melvin had admitted the crime and admitted that one of his coconspirators had gotten most of the money from the thefts.

There is nothing in the summary that indicated that Melvin challenged the statement that he had received $560,000.00. In fact, Melvin still does not directly dispute the $560,000.00 amount; rather, he repeats his argument that the Commission should be limited by the terms of the indictment. As stated above, this is not the case. The evidence before the Commission was sufficient to support a finding that Melvin's offense had involved over $500,000.00, certainly in the absence of a dispute about the amount.

Melvin's third argument is that the Commission improperly classified his offense. He contends that since the "Greatest I severity" category does not list his offense, 28 C.F.R. § 2.20, and, indeed, does not contain any property offenses,[1] his offense should be placed in the "very high category." The Commission responds that since property offenses between $10,000.00 and $500,000.00 are listed in the "very high" category, 28 C.F.R. § 2.20, it is logical to place property offenses over $500,000.00 in the next highest category. The Commission's position is consistent with the notes to the classification regulations, which state that "[i]f an offense is not listed above, the proper category may be obtained by comparing the severity of the offense behavior with those of similar offense behaviors listed." 28 C.F.R. § 2.20, General Note B. The decision to place property offenses over $500,000.00 in the "Greatest I severity" is a reasonable interpretation of the regulations which we will not overrule. *Garcia v. Neagle*, 660 F.2d 983, 990 (4th Cir.1981), *cert. denied*, 454 U.S. 1153, 102 S.Ct. 1023, 71 L.Ed.2d 309 (1982); *Corso v. Petrovsky*, 704 F.2d 424, 425 (8th Cir.1983).

However, the Commission does not seem to be applying that regulation consistently. Melvin's codefendant, Thomas Williams, convicted of the same crimes and given the same sentence, received a lower severity classification. Melvin contends, and the government does not deny, that Williams's offense was rated "very high."

Melvin's fourth claim is related to this argument. Melvin argues that the Commission acted arbitrarily in not classifying his offense the same as his codefendant's offense. Melvin contends that there is no reason for the different classification.

Parole Commission rules require that information about the parole status of codefendants be obtained and considered by the Commission in all initial or reconsideration

---

1. The "Greatest I severity" category is limited to aggravated felony, arson, large drug distribu- tion schemes, kidnapping, robbery and rape. 28 C.F.R. § 2.20.

hearings. United States Parole Commission Rules and Procedures Manual § 2.13–07 (1982). A number of federal district courts have held that codefendant parole status is only one factor of many to be considered. *Bush v. Kerr,* 554 F.Supp. 726, 734 (W.D.Wis.1982); *Baker v. McCall,* 543 F.Supp. 498, 501 (S.D.N.Y.1981), aff'd, 697 F.2d 287 (2d Cir.1982); *Partee v. Lane,* 528 F.Supp. 1254, 1264 (N.D.Ill.1981). In *Bush v. Kerr,* the district court held that even though it was not determinative, codefendant parole status *must* be considered. *Bush v. Kerr,* 554 F.Supp. at 734. The district court in the instant case made a similar holding.

The mere fact that Williams and Melvin may have received different parole dates does not, of course, violate Melvin's rights. However, there is nothing in the record to show that the Parole Commission considered Williams's parole status. In fact, there are only brief references to Williams. In the summary of the parole hearing, the panel noted that Williams was out on appeal. In a Parole Commission summary of a hearing held after this lawsuit was filed, the Commission merely noted the codefendant's name and the length of his sentence, concluding, "Further disposition unknown." It thus seems that the Parole Commission has at no time made any attempt to discover the parole status of Melvin's codefendant.

This court has often required the Bureau of Prisons to substantially comply with its own regulations. *Burton v. Ciccone,* 484 F.2d 1322, 1324 (8th Cir.1973). This includes nondiscriminatory application of those regulations. *Corso v. Petrovsky,* 704 F.2d at 425; *Albers v. Ralston,* 665 F.2d 812, 816 (8th Cir.1981). The offense classification regulation appears to have been applied inconsistently to Williams and Melvin, and the rule requiring consideration of codefendant status appears to have been disregarded. In view of the apparent lack of consideration by the Commission of Williams's case, the inconsistency may have been unintentional. Further, there may be reasons for a different classification; if Melvin was the ringleader and Williams a mere courier, it is not unreasonable to charge Melvin with the whole amount of the fraud, but not Williams. Such a decision may well be in the discretion of the Commission. However, in this case no such decision has been made.

In view of the absence of any indication that the Commission considered Williams's codefendant's parole status and the apparent inconsistent application of Commission rules, we must require that the Parole Commission reconsider Melvin's classification in light of Williams's status, and to explain any inconsistencies in offense classification. *See Dennis v. Solem,* 690 F.2d 145, 147 (8th Cir.1982).

We have been informed by counsel that because of Melvin's good behavior and his health problems, the Parole Commission recently advanced Melvin's release date to December 9, 1983. In view of the short time period from now until the release date, we believe that it is proper to direct the Parole Commission to reconsider Melvin's status as soon as possible, and to forego the requirement of a more complete hearing which might ordinarily be imposed. Also, in view of the short time, we direct that the mandate of the court shall issue on the date the opinion is filed. Fed.R.App.P. 41(a).

Reversed and remanded. Let the mandate issue forthwith.