**Vincent LYNCH, Petitioner-Appellee,**

v.

**UNITED STATES PAROLE COMMIS-
SION and Michael Quinlan,
Warden, Respondents-Appellants.**

**No. 960, Docket 84–2383.**

United States Court of Appeals,
Second Circuit.

Argued March 11, 1985.

Decided July 22, 1985.

Jordan Stanzler, Asst. U.S. Atty. for the S.D.N.Y., New York City (Rudolph W. Giuliani, U.S. Atty. for the S.D.N.Y., Steven E. Obus, Asst. U.S. Atty., New York City, of counsel), for respondents-appellants.

Thomas H. Sear, New York City (Spengler Carlson Gubar Brodsky & Frischling, New York City, of counsel), for petitioner-appellee.

Before TIMBERS, CARDAMONE and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

On March 17, 1969, Vincent Lynch was convicted in the United States District Court for the Southern District of New York on one count of robbery and one count of conspiracy. On December 2, 1976, while on parole based on his 1969 conviction, he was convicted of further federal offenses and sentenced to prison. As discussed below, he eventually received a parole hearing before a panel of Hearing Examiners ("Examiners"), who recommended that his former parole be revoked and that he be continued to a presumptive parole date on November 9, 1986. The National Parole Commission ("Commission"), however, disagreed with the presumptive parole date recommended by the Examiners, and in a Notice of Action determined that Lynch was to be continued to a ten-year reconsideration hearing in September of 1991. Lynch objected to this extension of his time to be served, and after unsuccessfully pursuing his administrative

remedies, sought the subject writ of habeas corpus pursuant to 28 U.S.C. § 2255 (1982).

After oral argument before Vincent L. Broderick, *Judge*, the petition was granted, subject to the grant of a new parole hearing. The district court found at least four distinct violations of Lynch's due process rights: (1) the Commission deviated from the recommendation of the Examiners, yet failed to state additional reasons beyond those considered by the Examiners; (2) the Commission failed to give adequate consideration to the parole status of Lynch's co-defendants; (3) the Commission delayed for almost eight months producing documents requested by Lynch under the Privacy Act and the Freedom of Information Act; and (4) although the Examiners had Lynch's pre-sentence report before them at the parole hearing, Lynch's counsel was denied access to the report. For the reasons set forth below, the judgment of the district court is affirmed in part and reversed in part.

BACKGROUND

In 1969, Lynch was sentenced to ten years imprisonment. On July 31, 1974, he was released on parole, and was to remain under parole supervision until September 4, 1978.

While on parole, Lynch committed a series of offenses involving the extortion of money from alleged narcotics dealers, which led in June 1976 to his indictment in the Southern District of Florida on charges of extortion and conspiracy. He failed to appear in that court and, pursuant to a bench warrant was arrested on November 16, 1976, by federal agents in Brooklyn, New York. He was returned to Florida and on December 2, 1976, he was convicted in the Southern District of Florida of conspiracy and racketeering charges, for which he was sentenced to twenty years imprisonment. He subsequently pleaded guilty to state charges in Florida related to the same acts for which he had received his federal sentence, and was sentenced to

three years to run concurrently with the sentences imposed on the federal convictions. He has completed serving his state sentence.

As a result of Lynch's parole violations, brought about by his Florida convictions, which occurred while he was serving his 1969 sentence, a parole violation warrant was lodged against him as a detainer while he was serving his Southern District of Florida prison sentence. Lynch was thereafter scheduled for a parole revocation hearing. This was to be combined with an initial parole hearing on his new sentence, and was originally set for November 1980. On October 16, 1980, however, Lynch was assaulted by other inmates at the Federal Correctional Institution—Lompoc, and sustained serious injuries, including the loss of an eye and permanent liver damage. On the advice of counsel, Lynch did not appear at the hearing. He was thereafter notified that his hearing would be held on the next docket after December 15, 1980, at the Springfield Medical Center for Federal Prisoners. On December 29, 1980, Lynch's parole representative, Benson Weintraub, made a request under the Freedom of Information Act ("FOIA") and the Privacy Act for all documents in Lynch's file. Weintraub also requested that the parole hearing be continued for 120 days, to allow for production and review of the documents. At that time, Lynch was scheduled for a hearing on the January 1981 docket at Springfield. Lynch's transfer to Otisville, N.Y., on January 8, 1981, however, resulted in rescheduling of the hearing to March 1981, apparently independently of Weintraub's request for a continuance, which was received by the Commission on January 15, 1981.

After its review of Weintraub's request for an adjournment, the Commission became aware that Weintraub was not an attorney.[1] Accordingly, its Regional Counsel, Henry Sadowski, notified Lynch on March 3, 1981, that Weintraub would not be permitted to make legal arguments on

---

1. Parole representatives are not required to be licensed attorneys. However, Mr. Weintraub was in the process of becoming a licensed attorney, receiving his license in the District of Columbia in August of 1981.

Lynch's behalf unless a supervisory attorney were present. The Commission produced for Lynch the information that was contained in his parole violation file. This file, however, did not include all the documents requested by Weintraub.

Lynch then retained an attorney, Lawrence M. Hermann, to represent him at the parole hearing, scheduled for March 25, 1981. On March 18, Hermann requested a delay of the hearing, partly because the requested documents had not yet been produced and partly because he had not had sufficient time to prepare for the hearing.

Hermann's request for a continuance was granted, and the parole hearing was rescheduled to May 29, 1981. On that date, Lynch requested another postponement, stating that he wished to retain a different attorney. In early July 1981, Thomas Sear, Lynch's present counsel, was appointed to represent Lynch. On July 14, Sear asked for a postponement on the ground that the documents requested had still not been produced, stating that he considered it "absolutely essential" that he have an opportunity to review the documents before the hearing.

Finally, on September 2, 1981, approximately eight months after Lynch made his FOIA and Privacy Act requests, copies of all disclosable documents, with the exception of the pre-sentence report, were sent to Sear. The Commission explained this delay by stating that it had received a large influx of similar requests, which were processed in order of their receipt. During the period of the delay, however, on August 31, 1981, new parole guidelines became effective, which had the effect of increasing the minimum recommended time to be served by an offender with Lynch's characteristics from 78 or more months to 100 or more months.

Lynch ultimately received a hearing before a panel of Hearing Examiners on September 22, 1981, which combined two procedures: a parole revocation hearing concerning the offenses committed while he was on parole from the Southern District of New York sentence imposed on the 1969 robbery and conspiracy convictions, and an initial parole hearing on his new, Southern District of Florida, federal sentence for racketeering and conspiracy. At this hearing, Lynch's counsel, Sear, requested disclosure of the Southern District of Florida pre-sentence report, which the Examiners had before them. The Examiners refused to disclose the report, stating that the pre-sentence report was a "court document" which they had no authority to release to him without the sentencing court's permission. The Examiners, however, offered to grant Lynch another continuance, so that his counsel might obtain court permission. Lynch chose not to request a continuance, his counsel noting the already-extensive delays in holding the hearing and stating that "we are anxious for you to review the substance of this case." At one point in the ensuing proceedings, the Examiners quoted to Lynch and his counsel a portion of the presentence report which contained a statement by a witness made at Lynch's trial, and which tended to support a finding that Lynch, in the course of his offenses committed while on parole, had beaten his victims. Lynch contested this charge, claiming that although he had been involved in a fight with the witness, it had nothing to do with the charges of which he was convicted. The Examiners apparently did not find Lynch's explanation credible, since they noted in their recommendation that Lynch had in fact beaten his victims.

After the hearing, the Examiners sent a recommendation in Lynch's case to the Commission. The Examiners reviewed the history of Lynch's criminal offenses, and his history of misconduct while in prison. The latter included five infractions, one of which related to Lynch's attempt to introduce marijuana into a federal penal institution by threatening to kill a prison staff member and his family. Lynch's salient factor score, a measure designed to predict as far as possible the likelihood of his committing another offense were he to be released on parole, was computed as 3. Commission regulations also provide for a rating of offense severity; these ratings are

designed to group comparable offenses together in terms of their gravity. Lynch's offense severity rating was calculated as Greatest II—the most serious group of offenses.[2] The Examiners noted that Commission guidelines for Greatest II offenses provided no suggested maximum term of incarceration before release on parole, and that the guideline range for a Greatest II offense coupled with a salient factor score of 3 was 100 or more months in prison. If Lynch were required to serve out the remainder of his 1969 ten-year sentence on robbery and conspiracy in addition to the twenty-year sentence imposed for his offenses committed while on parole in full, he would have to serve 199 months beyond the time he already served.

Nevertheless, the Examiners recommended that Lynch be paroled after serving ten years (120 months) on all the federal offenses. Accordingly, the panel recommended that parole on the 1969 convictions be revoked and that Lynch be continued to a presumptive parole on November 9, 1986, after serving 120 months.

The recommendation of the Examiners was reviewed by the Commission's Regional Office. The Regional Commissioner disagreed with the Examiners' recommendation that Lynch be continued to a presumptive parole date after serving 120 months and, pursuant to 28 C.F.R. § 2.24(a), referred the case to the National Commissioners for additional votes. The Commissioners reviewed the case, and issued a Notice of Action dated November 10, 1981, in which it was determined that Lynch was to be continued to a ten-year reconsideration hearing in September, 1991. This decision was based in part upon a comparison of the relative severity of Lynch's offenses with those specified in the next-lowest category, Greatest I, and upon his history of misconduct while in prison.

Pursuant to 28 C.F.R. § 2.25, Lynch appealed the decision of the National Commissioners to the Regional Commissioner, who

denied the appeal. Lynch then appealed, pursuant to *id.* § 2.26, to the National Appeals Board, which affirmed the decision of the Commissioners in a Notice of Action on Appeal dated July 8, 1982. The Notice of Action noted that there was no recommended maximum time to be served before parole in a Greatest II offense case, that Lynch had a record of poor institutional adjustment, and that he had failed to report for arrest in the Southern District of Florida. The only mitigating factor, the Board found, was the injury sustained by Lynch as a result of his being attacked while in prison, and this did not suffice to reduce the recommended time to be served prior to parole.

Lynch thereafter requested a reconsideration before the Regional Commissioner, alleging that Lynch had new information regarding the parole treatment of his code-fendants. The request for reconsideration was denied on November 19, 1982. The reasons for denial were stated in a letter to Lynch's counsel, to wit, that Lynch had the lowest salient factor score of any of the racketeering co-defendants; that he was the only co-defendant who was on federal parole at the time the offenses were committed; and that he had made a "very poor institutional adjustment and received numerous misconduct reports." Joint Appendix at 290.

Having thus exhausted his administrative remedies, Lynch filed the instant petition for a writ of habeas corpus in the Southern District of New York. Judge Broderick granted the writ subject to an order that the Commission conduct a new parole hearing in Lynch's case, directing specifically that the Commission apply the parole guidelines that were in effect prior to September, 1981, and that the Commission render a decision no more severe than that recommended by the Examiners unless additional factors not considered by the Examiners were stated.

---

**2.** The offense severity ratings now in effect use a terminology different from those under which Lynch's case was evaluated; the intent of the

rating device, however, remains the same. *See* 28 C.F.R. § 2.20 (1984).

The Commission filed a timely notice of appeal, and argues that its original determination, continuing Lynch to a reconsideration hearing in 1991, should be reinstated. According to the Commission, it adequately considered the status of Lynch's co-defendants; did not deprive Lynch of due process by relying upon, yet failing to disclose to counsel Lynch's pre-sentence report; did not deprive Lynch of due process by delaying his parole hearing; and with or without new or additional evidence was not required to abide by the recommendation of the Examiners. In response, Lynch challenges each of these arguments and additionally claims that because a new hearing has been held, in compliance with the district court's order, this appeal is now moot. We turn now to these contentions.

## DISCUSSION

■ We reject Lynch's claim that this appeal is moot. The Commission diligently, but unsuccessfully, applied for stays pending appeal both in the district court and in this Court. The applications failing, it held the hearing ordered by the district court, but on the present appeal asserts that its original determination of Lynch's case was proper in all respects, and that the district court erred in requiring a new hearing to be held. The Commission also challenges the terms under which the hearing was to be held, namely, that the parole guidelines in effect before September 1981 were to be applied, and that reasons not already considered by the Examiners must be proffered to support any deviation from the original recommendation of the Examiners. In the event the Commission is successful on this appeal, it asserts that it will reinstate the original determination of Lynch's case continuing him to a reconsideration hearing in 1991. Accordingly, we conclude that the issues in this case remain "live," see *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (per curiam). Although Lynch has had a new hearing pursuant to the district court's order, on appeal the Commission continues to assert the validity of its original determination and seeks to reinstate it. The parties

clearly have a "legally cognizable interest in the outcome," *id.* We conclude that the appeal is not moot. *United States v. Ferri*, 686 F.2d 147, 157 n. 14 (3d Cir.1982), *cert. denied*, 459 U.S. 1211, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983); *see Allen v. Hadden*, 738 F.2d 1102, 1106–07 (10th Cir.1984).

■ Turning, then, to the merits, we consider first the Commission's argument that it was not required to adopt the recommendation of the Examiners and in any event stated sufficient reasons for not doing so. We agree.

■ It is the Commission, and not the Examiners, which is vested with the responsibility to make the parole decision. The hearing examiners are merely empowered to make recommendations to the Commission. 18 U.S.C. § 4203(c)(2) (1982); 28 C.F.R. § 2.23, 2.24 (1984). The Commission in its Notice of Action stated that Lynch was to be continued to another hearing in 1991 because his earlier release "would depreciate the seriousness of [his] offense," and would not adequately account for his history of misconduct while incarcerated. This determination by the Commissioners may be disturbed only upon a showing of abuse of discretion, or arbitrary and capricious action. *Iuteri v. Nardoza*, 732 F.2d 32, 37 (2d Cir.1984); *Lieberman v. Gunnell*, 726 F.2d 75, 77 (2d Cir.1984); *Bialkin v. Baer*, 719 F.2d 590, 593 (2d Cir.1983). This is not a case in which the Commission determined to continue a prisoner for a period beyond the maximum recommended by the guidelines; in such cases, it has been held that the Commission may not confine a prisoner beyond the applicable guideline range based upon the severity of the offense, because that factor was used to select the guideline range in the first place. *See Alessi v. Quinlan*, 711 F.2d 497, 500 (2d Cir.1983) (citing cases). Rather, an offense of Greatest II severity involves no maximum recommended time to be served prior to parole. The Commissioners' decision therefore did not exceed the guidelines. Although the Commission is required to state "with particularity" its

reasons for denying parole, 18 U.S.C. § 4206(b) (1982), when the determination does not exceed a maximum term set forth in the guidelines, it is a sufficient statement of reasons to deny parole for the Commission to note the severity of a prisoner's offense and his poor institutional record. *Reynolds v. McCall*, 701 F.2d 810, 814 (9th Cir.1983); *Shahid v. Crawford*, 599 F.2d 666, 671–72 (5th Cir.1979); *Garcia v. United States Board of Parole*, 557 F.2d 100, 105 (7th Cir.1977); *see* 18 U.S.C. § 4206(a)(1) (1982).

 Lynch quotes from the Commission's Procedures Manual the proposition that a Notice of Action modifying the recommendation of a panel of examiners "should reflect . . . a brief statement of the reasons for the change." This language, however, does not require the Commission to set forth *detailed* reasons for declining to follow the recommendation of the Examiners. The reasons given by the Commission for making its determination were sufficient. *Reynolds v. McCall*, 701 F.2d at 814; *Shahid v. Crawford*, 599 F.2d at 671–72; *Garcia v. Board of Parole*, 557 F.2d at 105. Moreover, it is clear that the internal procedures manual of an executive agency does not create due process rights in the public. *E.g., Schweiker v. Hansen*, 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981) (Social Security Administration claims manual is for internal use; it has no legal force and does not bind the Administration); *Morton v. Ruiz*, 415 U.S. 199, 233–35, 94 S.Ct. 1055, 1073–1074, 39 L.Ed.2d 270 (1974) (Bureau of Indian Affairs manual is for internal use only); *United States v. New York Telephone Co.*, 644 F.2d 953, 959 n. 10 (2d Cir.1981) (Internal Revenue Service manual does not have the effect of law); *United States v. Fifty-Three Eclectus Parrots*, 685 F.2d 1131, 1136 (9th Cir.1982) (Customs Service manual is an internal agency guide, not intended for use of general public). In our view, the same principles apply to prisoners and the parole commission manual. For these reasons, we conclude that the Commission was not bound to follow the recommendation of the Examiners, and was not re-

quired to set forth factors not considered by the Examiners in deviating from their recommendation.

 Next, we address the Commission's argument that it was not bound to consider the parole status of Lynch's co-defendants, and that in any event it did so. The district court held that due process required the Commission to consider the parole status of Lynch's co-defendants at the time of his initial parole determination, and that no subsequent consideration could remedy the failure to do so. We disagree. Nothing in the Commission's regulations mandates that such information be considered. The district court referred to the Commission's Procedures Manual, which provides that information regarding the parole status of co-defendants "will be obtained where possible." This language does not require that such information be considered, rather, it merely recommends that such information be considered "where possible." Moreover, as discussed above, the Procedures Manual simply does not create due process rights in inmates.

 Lynch relies upon *Melvin v. Petrovsky*, 720 F.2d 9 (8th Cir.1983), for the proposition that consideration of the parole status of co-defendants is mandatory. In *Petrovsky*, however, a co-defendant was for no apparent reason given an offense severity rating different from that given the petitioning defendant, and the Commission had at no time taken this into account. Here, by contrast, the Commission did consider the parole status of Lynch's co-defendants, albeit not until Lynch requested reconsideration of his parole determination. The Commission's reasons for denying reconsideration on this basis were: (1) Lynch had the lowest salient factor score of any of his racketeering co-defendants; (2) Lynch was the only defendant on federal parole at the time the offenses were committed; and (3) Lynch had made a poor institutional adjustment and had received numerous misconduct reports. Unlike *Petrovsky*, then, Lynch did receive consideration of the parole treatment of his co-de-

fendants; that it took place after the initial hearing before the Examiners did not, under *Petrovsky*, violate Lynch's due process rights. Finally, we disagree with *Petrovsky* to the extent that it suggests that the Commission's Procedures Manual *requires* consideration of the parole status of co-defendants. The Manual merely states that such information will be obtained and considered "where possible." Given that the Manual does not create due process rights in inmates, and that its own language does not mandate consideration of co-defendants' parole treatment, we hold that on the facts of this case, Lynch's due process rights clearly were not violated.

We turn next to the adequacy of the consideration given Lynch's injuries sustained while in prison, as a mitigating factor to be applied in fixing a parole date. The Commission has not raised this as an issue on appeal, apparently construing the district court's decision as rejecting Lynch's argument that this factor was inadequately considered. Lynch, on the other hand, claims that the Commission's failure to address his physical disabilities "constituted a basis for the [district c]ourt's granting the petition." Whatever the correct interpretation of the district court's decision on this point, the Commission expressly does not challenge that part of the district court's order requiring it to "address all relevant circumstances, including Mr. Lynch's physical condition." Reply Brief for Respondents-Appellants at 6 & n. *. In view of our ultimate disposition of this case, we will not address this question further, but note only that 18 U.S.C. § 4207(5) (1982) requires the Commission to "consider ... reports of physical ... examination[s] of the offender."

We turn to the Commission's argument that its use of Lynch's pre-sentence report without disclosing it to his counsel was proper and did not violate his due process rights. There exists, in this connection, an issue with respect to whether Lynch himself had access to the report; the district court declined to make a finding of fact on this question. Whether or not Lynch had such access, however, we hold that the district court correctly ruled that the failure to disclose the report to Lynch's counsel violated Lynch's due process rights.

The Commission argues that it was sufficient that at Lynch's initial hearing, the Examiners read aloud an excerpt from the report that related to Lynch's beating his victims. This is claimed to satisfy due process because, according to the Commission, "[i]t is clear that the Commission relied upon only [this] small excerpt." Brief for Respondents-Appellants at 39 n. *. We do not, however, view it as being "clear" that this was the only significant information in the report. The report contained numerous other allegations as to Lynch's past behavior, any or all of which might have formed part of the reason for the Commission's decision to continue Lynch to another hearing in 1991. The failure to disclose the complete report is not now mitigated by self-serving declarations that only the portion read aloud was actually considered.

The cases relied upon by the Commission, *Nunez-Guardado v. Hadden*, 722 F.2d 618 (10th Cir.1983), and *Bowles v. Tennant*, 613 F.2d 776 (9th Cir.1980), provide it little support. *Nunez-Guardado* involved effective disclosure of all material information contained in the pre-sentence report, without disclosure of the actual document. *Bowles* did not involve a pre-sentence report at all. We take no position on the correctness of *Nunez-Guardado* or *Bowles*, and, in any event, we do not consider the disclosure herein of two sentences, read aloud to the inmate's counsel at the hearing, to constitute a sufficient disclosure under those decisions.

Section 4208(b) of title 18, U.S.Code, provides that a prisoner must be given "reasonable access" to all documents used by the Commission in making its determination. While the section is silent as to the right of the prisoner's counsel to see the report, in our view "reasonable access," at a minimum, requires that the prisoner be afforded the opportunity to review the re-

port with his counsel.[2] This interpretation is buttressed by the text of Fed.R.Crim.P. 32(c)(3), which, although it does not speak to the question of access to the report after sentencing, does deal with access of defendant's counsel to the report. As it stood in 1981, at the time of Lynch's parole hearing, the Rule provided that the report was disclosable to the defendant *or* his counsel. The Commission reads this to mean that once disclosure has been made to either defendant or counsel, the Rule is complied with and no further disclosure may properly be made. The better interpretation of the language as it read in 1981, it seems to us, is that disclosure to one does not bar disclosure to the other. The Rule contains no prohibition of disclosure to counsel merely because disclosure was made to defendant. *See United States v. Charmer Industries*, 711 F.2d 1164, 1167 (2d Cir.1983) (court considers questions as to "whether and under what circumstances a presentence report ... may be disclosed to persons other than the defendant, his attorney, or the prosecuting attorney"). Finally, we note that Rule 32(c)(3) was amended in 1983 to permit disclosure to defendant *and* his attorney. This amendment, however, contemplated no change in prior practice except in the situation where disclosure was made *only* to counsel, and not to the defendant. The amendment was designed to require counsel to review the report with the defendant, because "much of the content of the presentence report will ordinarily be outside the knowledge of counsel." Fed.R.Crim.P. 32(c)(3)(A), (B), (C) Advisory Committee Note to 1983 Amendment.

The foregoing confirms our conclusion that "reasonable access" to the report, in light of the standards for disclosure contained in Rule 32(c)(3), requires that access

be afforded to both defendant *and* his counsel. The "or" contained in the pre-1983 version of the Rule is better read as an inclusive word, rather than an exclusive one. It would be irrational to hold that "reasonable access" has been afforded to the report where defendant is permitted to see it, but counsel, who represents defendant and must make decisions that will later bind defendant, has no such right. Consequently, we reject the Commission's strained interpretation of the disclosure requirement.

■ The Commission argues that Lynch's counsel waived his right to object to the Commission's failure to disclose the report to him, by not requesting the continuance offered by the Examiners to seek court permission to view the document. We do not agree. As discussed above, there was no valid justification for refusing to disclose the report; there likewise was no justification for imposing further delays upon Lynch with respect to the parole hearing to which he was entitled. Although Lynch's counsel did not protest the non-disclosure in subsequent proceedings before the Commission, we do not believe he thereby waived Lynch's due process right to disclosure to counsel. The Commission cites no authority that would require such a result, and we are aware of none. Whether any subsequent objection to the Commission would have been availing is doubtful, in view of the Commission's adamant position herein that disclosure of the report to Lynch was sufficient and that no further disclosure was required or proper. We therefore hold that, under these circumstances, counsel did not waive his client's rights. We consider it necessary, however, to caution that in the future, given our clear holding herein that counsel may obtain disclosure of defendant's pre-

2. The exceptions to this rule are codified in 18 U.S.C. § 4208(c), and provide that if reasonable access to the report would seriously disrupt the prisoner's institutional program; reveal confidential sources of information; or result in harm to any person, then the agency having custody of the material must summarize "the basic contents of the material withheld" and "furnish such summary to the inmate," a phrase we construe to have the same meaning as to provide "reasonable access" to the summary.

sentence report in connection with parole proceedings (subject to the limits set forth in 18 U.S.C. § 4208(c) (1982)), failure to timely raise this issue before the Commission may lead to a finding that the right to object to non-disclosure has been waived.

Next, we address the Commission's contention that the delay in holding Lynch's hearing did not violate his due process rights because Lynch himself was responsible for the delay, and because the delay did not prejudice Lynch. While some of the delay was caused by Lynch, the Commission must also share in the responsibility, and it is apparent that, as the district court found, several factors caused the delay in Lynch's hearing, including his transfer, his change in representatives, and the Commission's delay in producing the requested documents. Nevertheless, it appears that if the Commission had not delayed the production of the requested documents, the hearing would have been held no later than July 1981.

Commission regulations require that documents requested by the prisoner under the Privacy Act (and under the FOIA, which are treated as Privacy Act requests) be produced within forty working days of receipt of the request. 28 C.F.R. § 2.56 (1984). Lynch's request was received by the Commission on January 15, 1981, yet the documents were not produced until September 2 of that year. Clearly, the Commission failed to comply with its own regulations. It seeks to excuse this failure, first, by pointing to a "large influx of similar requests," and second, by citing cases which hold that the FOIA was not intended as a discovery device in pending or prospective proceedings. We do not find these justifications persuasive.

■ That the Commission received many requests for information does not justify its failure to adhere to its regulations, and certainly does not justify such an extensive delay, of approximately eight months, in producing documents which the agency's regulations require must be produced within forty working days. The Commission's reliance on cases interpreting the breadth of individual rights under FOIA is misplaced; the Commission itself has conceded that Lynch's request was not made solely under FOIA, but also under the Privacy Act. Brief for Respondents-Appellants at 4. We therefore reject the Commission's argument that Lynch's counsel improperly delayed the parole hearing for two additional months by "misusing the Freedom of Information Act." The delay occasioned by the failure to produce the documents was attributable in substantial part to the Commission, due to its failure to timely produce the requested documents and to comply with its own regulations.

Finally, the Commission argues that Lynch was not prejudiced by the delay in the hearings. We disagree. The Commission concedes that had the hearing been held before September 1981, the guidelines applicable to Lynch would have provided for a recommended incarceration of 78 or more months before parole. At the time the hearing was held, the guidelines had recently been changed to provide for a recommended incarceration of 100 or more months. This change is apparently attributable to an adverse lowering of Lynch's salient factor score from 4 to 3 under the new guidelines, and the increased minimum recommended term of incarceration sufficiently demonstrates prejudice to Lynch resulting from the delay in the hearing.

■ The Commission correctly points out that neither the pre- nor post-September 1981 guidelines applicable to this case provide a *maximum* recommended term of incarceration, and that deviation from the guidelines may be justified where, as in Lynch's case, the prisoner has a poor institutional record. This, however, overlooks the fact that the Commission in this case *did* in fact rely on the guidelines, noting that in Lynch's case they provided a recommended *minimum* term of 100 or more months incarceration. We need not spec-

ulate as to the possible result had the recommended minimum term been only 78 or more months. Because the application of the new guidelines was the direct result of the Commission's failure to follow its regulations and timely disclose the documents requested by Lynch, we hold that the district judge ruled correctly in requiring the Commission to hold a new hearing and to apply the pre-September 1981 guidelines to Lynch. However, consistent with the earlier discussed analysis, a Commission decision which imposed a greater term of incarceration than that originally recommended by the Hearing Examiners, but which is within the applicable guideline range, need not advert to factors beyond those considered by the Examiners.

## CONCLUSION

For the foregoing reasons, the judgment of the district court which granted the writ of habeas corpus and ordered a new parole hearing is affirmed insofar as it was based upon the Commission's delay in disclosing requested documents and the refusal of the Examiners to disclose Lynch's pre-sentence report. Accordingly, the Commission's re-determination of Lynch's case, in compliance with the district court's order, is to remain in effect. The judgment is reversed to the extent that it was based upon the Commission's alleged failure to consider the parole status of Lynch's co-defendants, and the Commission's deviation from the Examiners' recommendation.

Affirmed in part; reversed in part.