778 F.2d 950
 Mark A. CORBETT, Appellee-Cross-Appellant,
v.
Dennis LUTHER, Warden Federal Correctional Institution,
Danbury, Connecticut; United States Parole
Commission; and United States Bureau of
Prisons, Appellants-Cross-Appellees.
 Nos. 282, 283, Dockets 85-2168, 85-2186.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 8, 1985.
Decided Dec. 9, 1985.
 
 John B. Hughes, Asst. U.S. Atty., D. Conn., New Haven, Conn. (Alan H. Nevas, U.S. Atty., D. Conn., of counsel), for appellants-cross-appellees.
 George Cardona, Student Counsel, Yale Law School, New Haven, Conn. (Mary A. McCarthy, Miriam Berkman, Stephen Wizner, Sally Zanger, Jerome N. Frank Legal Services Organization, Yale Law School, of counsel), for appellee-cross-appellant.
 Before FEINBERG, Chief Judge, VAN GRAAFEILAND and MESKILL, Circuit Judges.
 FEINBERG, Chief Judge.
 
 
 1
 This is an appeal by the United States Parole Commission (the Commission) from an order of the United States District Court for the District of Connecticut, Ellen Bree Burns, J., granting in part Mark A. Corbett's petition for a writ of habeas corpus and ordering the Commission to reconsider Corbett's request that it seek a reduction in his minimum sentence. Corbett also cross-appeals from the district court's denial of his claim that the Commission improperly calculated the time served on his sentence. For the reasons stated below, we dismiss the Commission's appeal as moot, and affirm in part and dismiss in part on Corbett's cross-appeal.
 
 I. Procedural History
 
 2
 This case has a complicated procedural history involving overlapping sentences for both youth and adult offenses. Corbett was arrested in August 1980 in Washington, D.C. and charged as an adult with burglary, attempted burglary and petty larceny under the District of Columbia Code. He was living at the time in a halfway house, serving a sentence for a prior, similar offense under the federal Youth Corrections Act (YCA), 18 U.S.C. Sec. 5005 et seq. (repealed 1984). The Commission had set a parole date of December 6, 1980 on that sentence, which for convenience we shall refer to as the YCA sentence or the youth sentence. After his arrest in August 1980, Corbett was incarcerated in a D.C. jail until April 18, 1981, when a D.C. Superior Court judge sentenced him to a term of four to twelve years on the burglary offense. The D.C. judge also recommended psychiatric counseling in a federal facility. For convenience, we shall refer to this sentence as the adult sentence or the D.C. sentence. The adult sentence was to be served consecutively to the youth sentence. In July 1981, after a short time in a D.C. adult correctional facility, Corbett was transferred to the federal prison in Danbury, Connecticut.
 
 
 3
 Shortly after Corbett's August 1980 arrest, the Commission lodged a detainer with the D.C. jail, charging Corbett with "program failure;" it also issued a Notice of Action retarding his YCA parole date and ordering a hearing on a rescission of that date. (Corbett states that he did not receive this notice until the fall of 1981). In December 1981, a year after Corbett's original YCA parole date, the Commission held a parole hearing on both the YCA sentence and the D.C. adult sentence, over which it had jurisdiction pursuant to the D.C.Code, Sec. 24-206(b). The Commission then rescinded the December 1980 parole date on the YCA sentence and set a new one for February 17, 1982. It also established February 17, 1986 as the presumptive parole date for the adult sentence; this was substantially later than the date indicated by Commission guidelines. The Notice of Action explained that the more lengthy period before Corbett became eligible for parole was necessary because of the four-year minimum sentence Corbett had received from the D.C. judge. The Commission noted as follows:
 
 
 4
 Guidelines established by the Commission for adult cases which consider the above factors indicate a range of 16-22 months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and information presented, a decision above the guidelines is mandated in that you have a minimum sentence which exceeds the guideline range.
 
 
 5
 Corbett appealed to the Regional Commissioner and to the National Appeals Board, arguing, among other things, that a decision beyond the guidelines "was not supported by the reasons or facts as stated." The rulings were affirmed at both levels, but the respective Notices of Action (dated July 13 and August 5, 1982), without explanation, voided the rescission of Corbett's original YCA parole date.
 
 
 6
 Thereafter, Corbett petitioned the Bureau of Prisons for recomputation of his adult sentence on the theory that by voiding the rescission of the original youth sentence parole date the Commission had effectively reinstated it, and all time served since December 6, 1980 should be credited to the term of his adult sentence. The Bureau denied this appeal.
 
 
 7
 In August 1984, Corbett filed a petition for a writ of habeas corpus in the District of Connecticut. He alleged that the Commission had failed to provide adequate reasons, as required by statute, 18 U.S.C. Sec. 4206(c), for postponing his eligibility for parole on his adult sentence for a period that substantially exceeded the guidelines.[1] Corbett argued that the four-year minimum adult sentence imposed by the D.C. court was not a sufficient reason because the Commission could have asked that court to reduce it, as authorized by section 24-201c of the D.C.Code, that Code governs the Commission's treatment of D.C. offenders in its custody. D.C.Code Sec. 24-209. Corbett asserted that his record of rehabilitation while in prison qualified him for such a petition under the standard of section 24-201c, and that he would otherwise be required to serve 26 months beyond the guideline maximum for similar offenders.[2]
 
 
 8
 In response to the petition for a writ, the Commission asserted that the decision whether to apply under section 24-201c for a reduction of sentence is a discretionary one, and that the examiner panel at Corbett's December 1981 parole hearing had justifiably recommended against such an application in view of Corbett's pattern of burglary offenses. The Commission also contended that the hearing examiner had advised Corbett's law student representative of this reason after the hearing, even though the Notice of Action made no mention of it.
 
 
 9
 The district court granted this portion of Corbett's habeas petition. Judge Burns found it impossible to determine from the official notices whether the Commission ever considered Corbett's request that it apply for a reduction in sentence and if it did, what standard the Commission applied. The judge found that section 24-201c gives "significant weight" to a prisoner's response to prison rehabilitation programs, and ordered the Commission to "conduct a new parole hearing to consider petitioner's request for a petition to the sentencing court for a reduction of his minimum sentence under the standard required by D.C.Code Sec. 24-201c." The judge denied Corbett's remaining claims, which are the subject of the cross-appeal and are discussed in section III below.
 
 
 10
 The Commission sought a rehearing and a stay pending appeal. In May 1985, the judge refused to change her decision or to grant a stay, noting as to the latter that the order "does not require petitioner's immediate release, but only a reconsideration of petitioner's request that the Commission petition the sentencing court for a sentence reduction...." An examiner panel of the Commission then complied with the court order and conducted another parole hearing on June 27, 1985, while the Commission pursued its avenues of appeal in this court. On July 18, this court also denied the Commission's motion for a stay pending appeal; the following day, the Commission apparently decided that good faith compliance with the district court's order required the Commission to apply for a reduction of Corbett's minimum term on the adult sentence. On October 7, the Commission filed such an application with the D.C. Superior Court, making clear the "unusual circumstances" that led up to the application. On October 11, 1985, the D.C. Superior Court granted the petition and reduced Corbett's minimum sentence to time served. The Commission has furnished us with copies of its application to that court and the court's decision.
 
 II. The Commission's Appeal
 
 11
 In its appeal, the Commission argues (1) that it was not obliged to provide reasons for its December 1981 decision not to apply under D.C.Code Sec. 24-201c for a reduction of Corbett's minimum adult sentence because that section does not create a liberty interest subject to procedural due process protection; (2) that the standard of section 24-201c is no different from the one used by the Commission; and (3) that, in any event, the Commission's decision is not subject to judicial review. The Commission's position on the last of these propositions seems contrary to the law in this circuit. Cf. Iuteri v. Nardoza, 732 F.2d 32, 36-37 (2d Cir.1984) (abuse of discretion standard for review of Commission decision under 18 U.S.C. Sec. 4206). However, because of developments after this appeal was filed, we need not address any of the Commission's arguments on the merits. We find that the D.C. court order on October 11, reducing Corbett's minimum adult sentence to time already served, rendered this portion of the controversy moot.
 
 
 12
 This aspect of the case is now moot because the issues are no longer "live" and the parties lack a "legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969); accord Murphy v. Hunt, 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982); United States Parole Commission v. Geraghty, 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980); Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975). The Commission's Notices of Action indicated that the reason that the period during which Corbett would not be eligible for parole exceeded the maximum recommended guidelines was that the four-year minimum sentence barred an earlier parole. Since that minimum has now been reduced and Corbett has served his entire (reduced) minimum sentence, the parties no longer have adverse legal interests capable of judicial resolution. Geraghty, supra, 445 U.S. at 396-97, 100 S.Ct. at 1208-09. It may be that the Commission has other grounds to deny parole and keep Corbett in prison beyond the period suggested by the guidelines, but that is not before us.
 
 
 13
 The propriety of this portion of the district court order is now an abstract legal question with no practical significance. Even if the district court had exceeded its authority, which we do not suggest is the case,[3] the results of its order are now irreversible. The D.C. judge could surely have denied the Commission's application for a sentence reduction if he so chose--particularly since the application fully reflects the Commission's reluctance to submit it. But the D.C. judge decided to reduce Corbett's minimum sentence to time served. The matter is now out of the Commission's hands.
 
 
 14
 It is true that compliance with a lower court order while an appeal is pending does not necessarily remove the power of the appellate court to decide the original controversy. In a recent Parole Commission case, for example, this court concluded that an appeal was not moot even though the Commission had already complied with the challenged district court order and held a new hearing under protest. Lynch v. United States Parole Commission, 768 F.2d 491 (2d Cir.1985). The Commission's compliance there, however, was not irrevocable since a reversal of the district court order would have permitted the Commission to reinstate an earlier determination deferring the prisoner's next parole hearing until 1991. Id. at 496. We therefore concluded that the issues remained "live." In this case, however, reinstatement of the Commission's original decision not to seek a reduction in Corbett's sentence is no longer an option, since the D.C. court, not a party, has acted upon the Commission's application and has reduced Corbett's minimum sentence.
 
 
 15
 It is arguable that the Commission--if not Corbett--still has a significant "personal stake" in a court ruling on the legal questions the Commission poses on appeal, see Geraghty, supra, 445 U.S. at 396, 100 S.Ct. at 1208. But that theoretical interest is insufficient here to avoid mootness or to bring the case within the recognized "capable of repetition yet evading review" branch of mootness doctrine. Murphy v. Hunt, supra, 455 U.S. at 482-83, 102 S.Ct. at 1184-85. In Weinstein v. Bradford, supra, the Court stated that absent a reasonable expectation that the same complaining party will be subjected to the same action again, the adversarial nature of the question has disappeared.
 
 
 16
 While petitioners will continue to administer the ... parole system with respect to those who at any given moment are subject to their jurisdiction, there is no demonstrated probability that respondent will again be among that number.
 
 
 17
 423 U.S. at 149, 96 S.Ct. at 349. The same reasoning applies here. Corbett has now served his minimum sentence and there is no demonstrated probability that he will again be subject to a parole decision by the Commission involving its discretion under section 24-201c.
 
 
 18
 Moreover, we do not consider the issue as one that is likely to "evade review." The timetable of what occurred here is instructive. The district court denied the Commission's application for a stay on May 2, and this court denied a similar application on July 18. On July 19, the Commission decided to apply to the D.C. court for a reduction in Corbett's sentence, and on October 7, the day before the argument in this court, the Commission actually filed the application. The period from May 2 to October 7 was over five months. Had the Commission pursued an expedited appeal immediately after the district court denied the stay, there would have been more than enough time for this court to render a decision before the Commission submitted its application to the D.C. court. The Commission apparently did not follow that course because it mistakenly assumed that once it decided to apply for a reduction in Corbett's minimum sentence, further developments could not worsen its position with respect to mootness. Apparently no one focused sufficiently on what would happen if the D.C. court, in response to an application, actually did reduce Corbett's minimum sentence. It is true that counsel for Corbett indicated on July 18 that he would not make an issue of mootness, but mootness is an issue to be decided by the court, not by the parties. Now that the D.C. court has reduced Corbett's minimum sentence, this aspect of the appeal is moot.
 
 III. Corbett's Cross-Appeal
 
 19
 In his cross-appeal, Corbett raises several issues regarding the computation of his sentence that are not moot. His minimum sentence on the adult offense is now resolved, but he continues to have a personal stake in the computation of the time he has served to date on his maximum sentence of 12 years on that offense. Corbett alleges that all time served between his arrest in August 1980 and February 17, 1982, which was his new youth offense parole date, should be credited to his adult sentence. In support of this proposition, he offers three theories: first, that he was effectively paroled on the youth offense on December 6, 1980 (or a maximum of 90 days later) as a result of the Commission's voiding of the rescission of that parole date; second, that his December 1981 parole hearing was procedurally improper and the rescission was therefore invalid in any event; and third, that since he was incarcerated during the entire period in question in adult prisons rather than in segregated youth facilities, as required by 18 U.S.C. Sec. 5011 (repealed 1984), all that time must be credited to his adult offense.
 
 
 20
 The district court found that under Commission regulations, 28 C.F.R. Sec. 2.28(c), Corbett's YCA release date was automatically voided by the imposition of the adult sentence on April 28, 1981.[4] Judge Burns also found that the notice of parole retardation issued after Corbett's arrest was sufficient to postpone the parole date until the December 1981 hearing. With regard to the time Corbett spent in federal facilities on his youth offense, Judge Burns ruled that Corbett was precluded from raising that question retroactively since he had failed to seek a transfer at the time of the allegedly improper incarceration. The judge did, however, question whether some of the time spent in D.C. jails (August 1980 to July 1981) should be credited for sentence purposes to the adult offense, and remanded this issue to the warden of the federal prison in Danbury.
 
 
 21
 We agree with the district judge that the December 1980 YCA parole date was automatically rescinded by the imposition of the adult sentence. We do not approve of the Commission's delay in the timing and notice of the new parole hearing, or of the lack of clarity in its own documents concerning the reason for voiding the earlier rescission. But we do not find these to be grounds for reversal of the reasonable conclusions reached by the district court. As to the time served in the federal adult facilities, we also agree with the district court that this time cannot be modified retroactively without double-counting. We therefore affirm the district court rulings on these issues.
 
 
 22
 As to the unresolved claim regarding time served in D.C. jails, in response to the district court order the Bureau of Prisons determined in a notice dated June 26, 1985 that all time served in D.C. facilities must be credited to Corbett's YCA sentence. The Commission correctly notes that this determination has not been appealed to the district court and is not ripe for our consideration. Therefore, this portion of the cross-appeal must be dismissed.
 
 
 23
 The Commission's appeal is dismissed as moot. On the cross-appeal, we affirm in part and dismiss in part.
 
 
 
 [1]
 18 U.S.C. Sec. 4206(c) provides, regarding "Parole determination criteria," as follows:
 The Commission may grant or deny release on parole notwithstanding the guidelines referred to in subsection (a) of this section if it determines there is good cause for so doing: Provided, That the prisoner is furnished written notice stating with particularity the reasons for its determination, including a summary of the information relied upon.
 
 
 [2]
 Section 24-201c of the D.C.Code provides in relevant part as follows:
 When by reason of his training and response to the rehabilitation program of the Department of Corrections it appears to the Board that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, and that his immediate release is not incompatible with the welfare of society, but he has not served his minimum sentence, the Board in its discretion may apply to the court imposing sentence for a reduction of his minimum sentence. The court shall have jurisdiction to act upon the application at any time prior to the expiration of the minimum sentence and no hearing shall be required.
 
 
 [3]
 We note that the district court order did not mandate any particular result upon rehearing. It merely required an explanation of the basis of the new decision and the use of "rehabilitation" as one of the factors
 
 
 [4]
 28 C.F.R. Sec. 2.28(c) provides as follows:
 Additional sentences. If a prisoner receives an additional concurrent or consecutive federal sentence following his initial parole consideration, the Regional Commissioner shall reopen his case for a new initial hearing on the next regularly scheduled docket to consider the additional sentence and reevaluate the case. Such action shall void the previous presumptive or effective release date. However, a new initial hearing is not mandatory where the Commission has previously evaluated the new criminal behavior, which led to the additional federal sentence at a rescission hearing under 28 CFR 2.34; except where the new sentence extends the mandatory release date for a prisoner previously continued to the expiration of his sentence.