**Albert Herold CENICEROS, Petitioner–Appellant,**

v.

**UNITED STATES PAROLE COMMISSION, et al., Respondents–Appellees.**

No. 86–1889.

United States Court of Appeals, Fifth Circuit.

Feb. 24, 1988.

---

*Scientology v. Internal Revenue Service,* —— U.S. ——, 108 S.Ct. 271, 98 L.Ed.2d 228 (1987).

1. 837 F.2d at 1348.

2. *Id.,* 837 F.2d at 1348.

3. —— U.S. ——, 107 S.Ct. 734, 93 L.Ed.2d 732 (1987).

Russell M. Aboud, El Paso, Tex., for petitioner-appellant.

Mark M. Greenberg, Asst. U.S. Atty., El Paso, Tex., for respondents-appellees.

Before GOLDBERG, POLITZ and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Habeas petitioner Albert Herold Ceniceros was convicted of conspiracy to violate the Hobbs Act through extortion and received a fifteen-year sentence. The same jury acquitted Ceniceros of the substantive offense of violating the Hobbs Act by aid-ing and abetting the attempted murder of Theodore Daniels. In fixing the severity rating of Ceniceros' offense for purposes of determining a probable parole date, the Parole Commission considered that Ceniceros aided and abetted the Daniels' attempted murder. The petitioner sought habeas relief on grounds that the Parole Commission's own regulations prohibited it from considering that he was implicated in Daniels' murder because the jury exonerated him of this conduct. We are persuaded that the Parole Commission violated its own regulation and accordingly vacate the district court's judgment and remand with instructions.

### I.

The petitioner, Ceniceros, owned and operated an adult bookstore in El Paso, Texas. During 1977, Theodore Daniels opened a competing bookstore dealing in the same type pornographic material that Ceniceros sold. Daniels began cutting his prices and caused petitioner to suffer a substantial loss of business. The charges on which Ceniceros was indicted and tried arose out of Ceniceros' alleged participation in threats and acts of violence against Daniels after Daniels refused to raise his prices.

The grand jury indicted Ceniceros on three counts. Count I charged a conspiracy to interfere with interstate commerce, in violation of the Hobbs Act;[1] the indictment alleged that Ceniceros participated in four overt acts. The government alleged in overt act 1 that Ceniceros threatened to firebomb Daniels' bookstore in March of 1977 unless Daniels agreed to raise his prices. Next, overt act 5 alleged that Ceniceros and two of his alleged co-conspirators met in Las Cruces, New Mexico, where the three of them discussed Daniels' sales practices, particularly his price cutting.

---

1. The Hobbs Act, 18 U.S.C. § 1951, provides in pertinent part:

(a) Whoever ... obstructs, delays, or affects commerce ... by robbery or extortion or attempts or conspires to do so, or commits or threatens physical violence to any person or property in furtherance of a plan ... shall be fined not more than $10,000 or imprisoned not more than 20 years, or both.

(b) ....

\* \* \* \* \* \*

(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear.

According to overt act 6, Ceniceros showed Barron, the alleged hit man, the location of Daniels' bookstore, the direction Daniels usually took to go home, and the best route for Barron to take to flee from El Paso to Las Cruces after Barron shot Daniels. Finally, overt act 7 alleged that the three conspirators picked up the .357 magnum that was used to shoot Daniels after the gun had been shipped to El Paso from Las Cruces.

Count II charged Ceniceros and his co-conspirators with the substantive offense of violating the Hobbs Act by shooting Daniels in furtherance of a scheme to obstruct commerce. Count III charged petitioner with unlawfully traveling in interstate commerce from New Mexico to Texas with intent to commit a crime of violence, in violation of the Travel Act.[2]

Following the trial, the jury convicted Ceniceros on Count I, but acquitted him on Counts II and III.

The district court sentenced Ceniceros to serve fifteen years in the penitentiary. The Parole Commission assigned petitioner a category eight offense severity rating because "your total offense behavior involved aiding and abetting the attempted murder of Theodore Daniels." Petitioner sought habeas relief in the district court on the theory that the Parole Commission violated its own regulations in assigning him a higher offense rating than the Commission's regulations permitted. The district court rejected petitioner's claims, and this appeal followed.

## II.

The Parole Commission bases its parole assessments on guidelines that it promulgates as authorized by statute. 18 U.S.C. §§ 4201–4218, 4203(a)(1); see 28 C.F.R. §§ 2.1–2.64 (1987). The inmate's "offense severity rating" is a critical component in the Parole Commission's formula for determining when that inmate is eligible for parole. *See generally* id. § 2.20. In establishing an inmate's offense severity rating, the regulations authorize the Parole Commission to consider a broad range of offense-related facts developed from law enforcement groups, probation officers, trial testimony, or other sources.[3] However, the guidelines exclude one specific fact from the Parole Commission's consideration: "the Commission shall not consider in any determination charges upon which a prisoner was found not guilty...." *Id.* § 2.19(c).[4]

The district court read § 2.19(c) narrowly. It determined that the indictment did not charge Ceniceros with attempted murder, and thus the jury did not acquit him of that crime. The court also concluded that the Parole Commission was entitled to consider that petitioner committed the overt acts alleged in Count I of the indictment relating to petitioner's participation in Daniels' attempted murder. Accordingly, the

**2.** 18 U.S.C. § 1952.

**3.** 28 C.F.R. § 2.19 authorizes the Commission to consider a broad range of relevant evidence, including prison staff reports, a prisoner's prior convictions, pre-sentence investigation reports, victim statements, and "such additional relevant information concerning the prisoner (including information submitted by the prisoner) as may be reasonably available." *Id.* § 2.19(b)(1). This circuit has held more specifically that the Commission may properly consider "dismissed counts of an indictment, hearsay evidence, and allegations of criminal activity for which the prisoner has not even been charged." *Maddox v. United States Parole Comm'n,* 821 F.2d 997, 999 (5th Cir.1987) (footnotes omitted).

**4.** Section 2.19(c) provides, in pertinent part:

(c) The Commission may take into account any substantial information available to it in establishing the prisoner's offense severity rating, salient factor score, and any aggravating or mitigating circumstances, provided the prisoner is apprised of the information and afforded an opportunity to respond.... However, the Commission shall not consider in any determination charges upon which a prisoner was found not guilty after trial unless;

(1) Reliable evidence is presented that was not introduced at trial (*e.g.,* a subsequent admission or other clear indication of guilt); or

(2) The prisoner was found not guilty by reason of his mental condition; or

(3) The acquittal is contradicted by, or inconsistent with, a conviction by the same or another trial jury.

court found no merit in Ceniceros' claims for habeas relief.

### III.

Petitioner does not, indeed cannot, dispute the settled law that gives the Parole Commission very broad discretion in making parole release decisions. *Brown v. Lundgren,* 528 F.2d 1050, 1055 (5th Cir.), *cert. denied,* 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 283 (1976). Similarly, it is wellsettled that the Parole Commission's decisions may be predicated on facts gleaned from any number of sources other than formal trial testimony. *See, e.g., Melvin v. Petrovsky,* 720 F.2d 9, 11 (8th Cir.1983) ("The Commission is not limited to the indictment and conviction in determining the severity of the offense, but may consider other reliable information."); *Page v. United States Parole Comm'n,* 651 F.2d 1083, 1086 (5th Cir.1981) ("The Commission has the right to consider any evidence that existed at the time of sentencing...."). It is also uncontradicted that the decision of the Parole Commission can be disturbed only if "flagrant, unwarranted, or unauthorized." *Id.* at 1085.

 Although the standard for reviewing the Commission's decision is narrow, the Parole Commission is bound by its regulations unless it can show good cause for deviating from them. *See Maddox v. United States Parole Comm'n,* 821 F.2d 997, 1000 (5th Cir.1987); *Joost v. United States Parole Comm'n,* 698 F.2d 418, 419 (10th Cir.1983); accord *Solomon v. Elsea,* 676 F.2d 282, 286–87 (7th Cir.1982). Thus, the only issue presented in this case is whether the Parole Commission violated its own guidelines by considering that Ceniceros aided and abetted the attempted murder of Theodore Daniels.[5]

Ceniceros' argument is straightforward: Count II of the indictment charged him with obstructing commerce by aiding and abetting the attempted murder of Theodore Daniels in violation of the Hobbs Act; the jury's not guilty verdict on that charge must be interpreted as a finding that he did not participate in planning or aiding and abetting the attempted murder of Theodore Daniels.

The government argues first that "charges" as used in § 2.19(c) must be given a narrow interpretation. The government would have § 2.19(c) apply in this case only if Ceniceros had been acquitted of a specific charge of attempted murder. In support of this narrow interpretation, the government relies upon *Joost v. United States Parole Comm'n,* No. 82–3064 (D.Kan. Sept. 1, 1983) [Available on WESTLAW, 1983 WL 2186]. In that case, Joost was convicted of conspiracy to violate the civil rights of another resulting in death. He was acquitted of obstructing justice by intimidating a witness with force or violence and of using an explosive device in the commission of a felony. The Parole Commission denied Joost's parole because "the committed offense involved the death of an individual." The district court upheld the Parole Commission's ruling.

Although the *Joost* court accepted a narrow view of the restriction that § 2.19(c) placed on the Parole Commission, *Joost* is readily distinguishable from the instant case. The conspiracy count on which *Joost* was convicted was found by the jury to have "resulted in death." This finding, which causally connected Joost's conduct to the victim's death, distinguishes Joost's case from the instant one.

The fundamental interest of the Parole Commission is the conduct of the prisoner and the level of his participation in anti-social behavior. We are persuaded that the most reasonable interpretation of § 2.19(c) is that the Parole Commission may not consider specific conduct in evaluating the severity of a prisoner's offense when a jury by its verdict has necessarily determined that the prisoner did not engage in that conduct. We therefore cannot accept the Parole Commission's narrow interpretation of "charge" in § 2.19(c).

---

5. The Parole Commission asserts that it acted completely within its guidelines in assessing Ceniceros' parole potential; it does not contend that this is a case for good cause deviation from its guidelines. Accordingly, we do not address this issue.

The government next contends in substance that the jury did not necessarily exonerate Ceniceros from participation in Daniels' attempted murder because the verdict reflects equivocal findings by the jury. This is true, according to the government, because we are entitled to assume that when the jury found Ceniceros guilty on Count I, it found that he committed the overt acts alleged in Count I, including those that alleged his participation in the attempted murder; this assumed finding underlying the guilty verdict on Count I is inconsistent with the not guilty verdict on Count II, and the Parole Commission is entitled to disregard the verdict on Count II. On the contrary the jury's acquittal on Count II, in which it presumably found that Ceniceros did not participate in the attempted murder of Daniels, is not irreconcilable with its Count I guilty verdict. The jury was free to find Ceniceros guilty on Count I predicated solely on his involvement in overt act 1,[6] which did not include allegations that he participated in Daniels' attempted murder.

If the guilty verdict on Count I and the not guilty verdict on Count II were truly irreconcilable, we agree that the Parole Commission could decide whether to consider Ceniceros' alleged participation in Daniels' attempted murder in fixing the severity of the offense. *See* § 2.19(c)(3). We simply do not have such a case here, and we must reject the government's argument on this point.

The government argues finally and in the alternative that the Commission is not bound by the jury's exoneration of Ceniceros. It contends that the proof may be insufficient to convict yet sufficient to support a Parole Commission determination. One fact prevents us from agreeing with the Parole Commission: it adopted a regulation in which it agreed that it would not consider "charges upon which a prisoner was found not guilty." The Commission in effect argues that it need not follow its own regulation. The government cites no authority in support of this argument, and we reject it.

## IV.

Because the only reasonable interpretation of Ceniceros' acquittal on the substantive Hobbs Act charge is that the jury found that he played no role in Ted Daniels' attempted murder, the Parole Commission is prohibited by § 2.19(c) from considering that conduct in assessing Ceniceros' parole potential. Accordingly, we vacate the judgment of the district court and remand with instructions to enter a judgment consistent with this opinion.

VACATED and REMANDED.

---

**6.** Overt act 1 charges that Ceniceros visited Daniels and threatened to firebomb his bookstore if

he did not raise his prices.